CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

MAR 03 2015

JULI... ...DLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| SARAH ELIZABETH BUTTERS, | ) |
| Plaintiff. | ) |
| | ) CASE No: 5:15CV00015 |
| v. | ) |
| | ) |
| JAMES MADISON UNIVERSITY, | ) |
| Defendant. | ) |

---

# COMPLAINT

## I. Introduction

1. This is an action for damages against the Defendant James Madison University for discrimination on the basis of sex in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

2. Sarah Elizabeth Butters was sexually assaulted by three James Madison University students in Panama City, Florida on March 3, 2013. The perpetrators of the sexual assault recorded their actions on video. The video of the sexual assault was then rampantly disseminated amongst James Madison University's student population. After her return from spring break, Ms. Butters endured repeated sexual harassment while on James Madison University's campus, in connection with distribution of the video of the original assault. For more than one year, James Madison University, by and through its various administrators and employees, tacitly and implicitly discouraged Ms. Butters from proceeding with a sexual assault and harassment complaint through University channels. When she persisted with her complaint, James Madison

1

University ultimately made formal acknowledgment that Ms. Butters was sexually assaulted by the three James Madison University students and sexually harassed on James Madison University's campus in connection with distribution of the video, but only following nine separate adjudicatory hearings over a period of more than one year after Sarah Butters' original report of the incident to the University. These findings notwithstanding, James Madison University allowed the perpetrators of the assault and harassment to remain on campus, in close proximity to Ms. Butters. Ultimately, James Madison University determined that the appropriate penalty from the University's perspective for the series of three separate and distinct offenses of the original sexual assault in Florida, videotaping the assault and then distributing the video widely within the James Madison University community, was the expulsion *following graduation* of the three students who committed the offenses. This decision rewarded two of the three students who committed the offenses with degrees and diplomas, including the full rights, honors, and privileges associated with a degree from the University, and afforded the third with the opportunity to remain on campus indefinitely until his studies are concluded. James Madison University's indifference to sexual assault and harassment within its student population as evidenced by the manner in which the disciplinary action meted out in response to the offenses committed against Ms. Butters was handled, and in particular the University's implicit acceptance of sexual assault and harassment on campus illustrated by the unmonitored, unenforceable, "wink and a nod" so-called "punishment" ultimately imposed, forms the foundation of Ms. Butters' claim for civil damages.

## II. Jurisdiction and Venue

3. This Court has subject matter jurisdiction over Ms. Butters' claim pursuant to 28 U.S.C. §1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

4. Plaintiff brings this action pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), as more fully set forth herein, to redress a hostile educational environment at James Madison University.

5. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b)(1) and (2), as the Defendant is located in Harrisonburg, Virginia and a substantial part of the events and omissions giving rise to this claim occurred in Harrisonburg.

## III. Parties

6. The Plaintiff, Sarah Butters, is a resident and citizen of Virginia. Ms. Butters was a student at James Madison University from her enrollment in August, 2010 through her withdrawal from the University on May 30, 2014.

7. The Defendant, James Madison University, is an institution of higher education located in Harrisonburg, Virginia. On its 721 acre campus it hosts both undergraduate and graduate programs, has a total enrollment of approximately 20,000 students, employs 2,653 faculty and staff, and operates on an annual budget of approximately $500 million dollars. At all times relevant to Ms. Butters' complaint, James Madison University received funding from the federal government.

## IV. Relevant James Madison University Employees and Administrators

8. Jonathan R. Alger is the president of James Madison University. He assumed that

3

position on July 1, 2012 and has served as the University's chief executive officer from that date to the present. In his capacity as president and CEO, Mr. Alger is responsible for developing a vision and mission for the university and for overseeing health and safety on campus.

9. Dr. Mark J. Warner is the Senior Vice President of Student Affairs and University Planning at James Madison University. In this capacity, he is in charge of a variety of departments within the University, including but not limited to, the Office of Student Accountability and Restorative Practices. The Office of Student Accountability and Restorative Practices was re-named on June 1, 2014, having been called the Office of Judicial Affairs prior to that time. Dr. Warner is advertised on James Madison University's website as the "living embodiment of James Madison University's culture and spirit."

10. Dr. James McConnell is the Dean of Students and Student Life at James Madison University. He is in charge of the office that responds to the informational and personal concerns of students, parents, faculty and staff. His organizational objective is to support and empower students and their families in crisis.

11. Dr. Joshua Bacon is the Director of the Office of Student Accountability and Restorative Practices. He is responsible for implementation and oversight of the student accountability process and, in particular, the University's Sexual Misconduct Accountability Process whereby the school addresses allegations of sexual misconduct.

12. Wendy Young, formerly the Associate Director of Judicial Affairs at James Madison University, is the Council Coordinator for the Office of Student Accountability and Restorative Practices and was the first point of administrative contact when Ms. Butters originally reported her sexually assault and harassment on March 27, 2013.

4

## V. Background

13. Ms. Butters graduated from Hopewell High School in Hopewell, Virginia in 2010. Her cumulative grade point average was 8th highest among her graduating class of 250 students. She was a member of the National Honor Society, class secretary for three years, captain of the soccer and field hockey teams, a member of the swim team, and also ran cross country. She received multiple merit based scholarships to assist her with paying college tuition, and chose to attend James Madison University.

14. Ms. Butters enrolled at James Madison University in the Fall of 2010 to begin her freshman year.

15. James Madison University has an active fraternity and sorority presence on its campus.

16. The University recognizes seventeen fraternities, twelve sororities and four auxiliary organizations, in addition to hosting two Councils that preside over Greek life on campus. These organizations, all of which are formally affiliated with James Madison University, participate in a wide range of social and philanthropic activities throughout the year.

17. The stated purpose for the fraternities and sororities at James Madison University is to foster and develop character, leadership, scholarship, service and philanthropy among the University's undergraduate population. For guidance in this mission, James Madison University assigns one member of its staff, faculty or administration to advise the members of each fraternity and sorority.

18. Shortly after her arrival in the Fall of 2010, Ms. Butters and fifty-nine other female classmates, pledged the Sigma Kappa sorority. This organization has been recognized by and affiliated with James Madison University since November 9, 1874. When Ms. Butters

5

became a member, the organization included approximately 150 students. The advisor assigned by James Madison University to Sigma Kappa sorority was Paula Polglase, then Assistant Director of Alumni Relations at James Madison University.

## VI. The Sexual Assault

19. On Saturday March 2, 2013, Ms. Butters joined a large group of James Madison University students in Panama City, Florida for the University's spring break. Many of the James Madison University students present in Panama City, Florida, including Ms. Butters and twelve of her friends, were staying in a single beach front condominium complex called "The Summit."

20. On Sunday March 3, 2013, Ms. Butters and several of her female friends prepared alcoholic cocktails and went down to the beach in front of the complex. The girls planted a large James Madison University flag in the sand to identify their location for the benefit of other James Madison University students.

21. As the day progressed, dozens of James Madison University students convened on the beach and spent the day drinking alcohol and socializing. The vast majority of the James Madison University students present were members of various fraternities and sororities on campus, and many were familiar with one another from prior social interaction on campus in Harrisonburg.

22. Ms. Butters consumed alcohol, had very little to eat, and spent the majority of the day under the hot sun. By the afternoon, she was visibly intoxicated.

23. Ms. Butters returned to her condominium complex where she was invited to join three fellow James Madison University students: Jay Kyler Dertzbaugh, Michael Joseph Lunney Jr. and Nicholas John Scallion, in their condominium which was also located in "The Summit" complex.

6

24. Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion were all members of the Sigma Chi fraternity. Sigma Chi is a national fraternity with an affiliated chapter at James Madison University. Ms. Butters knew these three Sigma Chi fraternity members through her affiliation with Sigma Kappa sorority and the various intra-fraternity and sorority events hosted at James Madison University.

25. As the afternoon progressed to evening, Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion cornered Ms. Butters in the bathroom of their condominium. They removed her bathing suit top and the three men took turns groping and fondling her bare breasts. Attempts were made to remove her bathing suit bottom, and her swim suit top was taken from her. Her attempts to put her top back on were repeatedly thwarted. One of the men forcibly pulled Ms. Butters onto his lap, as he fondled her exposed breasts.

26. Throughout the duration of this sexual assault, Ms. Butters repeatedly told the three men that their behavior "was not alright," requested that they "stop," and said "no." She was visibly intoxicated, unsteady on her feet and her words were slurred. At no time did she consent, nor was she capable of consenting to any of the sexual activity that transpired in the bathroom.

27. Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion recorded their sexual assault of Ms. Butters on video using a cellular telephone. A true and exact copy of the video recording is incorporated herein by reference as Plaintiff's Exhibit 1, but will be filed separately under seal with this Court.

28. At the time of her assault, Ms. Butters was heavily intoxicated, to such extent that she has no direct memory of the event.

29. For the remainder of the week, rumors of the video began to circulate amongst the

7

James Madison University student population present in Panama City, Florida. When Ms. Butters confronted Mr. Dertzbaugh concerning the rumors surrounding her sexual assault and the existence of a video, he denied both the act and the recording.

### VII. Sexual Harassment

30. Residence halls at James Madison University reopened for students returning from spring break on Monday March 10, 2013. Classes for the spring semester resumed shortly thereafter. The video of the sexual assault of Sarah Butters began to circulate throughout the James Madison University community and, in particular, throughout the membership of the University's various fraternities and sororities.

31. On March 14, 2013, Mr. Scallion showed the video to one of the members of Ms. Butters' sorority and stated: "I could ruin her [Ms. Butters'] life with this video." A similar conversation transpired between Mr. Scallion and a different member of Ms. Butters' sorority by telephone.

32. By the end of the first week back on campus, Ms. Butters was aware that a video of her sexual assault was circulating within the student body at James Madison University. She was tremendously concerned, embarrassed and confused about what steps should be taken to remedy this serious problem. Although she had not yet seen the video herself, many of her fellow students addressed Ms. Butters on a daily basis concerning the disturbing nature of its content.

33. On March 22, 2013 Mr. Scallion sent a text message to Ms. Butters which states:

"Hey I've heard a lot of crazy rumors about spring break. Listen we don't have any video and never meant for there to be any problems. We're sincerely sorry about this and it's clearly an inconvenience for all of us. We don't want any problems and don't want you to have to deal with any of this bullshit. This is getting blown out of proportion and please let us know if there's anything we can do. We feel really bad and apologize for the drunken stupidity. We're not bad guys and we really didn't mean to disrespect you like this. And if

8

you want lets talk about it in person. Again, were [sic] extremely sorry and regret that any of this happened. Hope you're doing okay."

34. On March 27, 2013, while incessant notification, comment, and discussion regarding the continued dissemination of the video recording persisted, Ms. Butters realized that her deeply personal problem had grown too large for her to handle on her own. She met with the President of her sorority, notified the President of Sigma Chi fraternity and contacted her sorority advisor Paula Polglase, an employee of James Madison University.

35. Sam Young, the president of Sigma Chi, responded to Ms. Butters' correspondence immediately, and asked to meet with her as soon as possible. After Mr. Young saw the video of Sigma Chi members sexually assaulting Ms. Butters, Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion were immediately expelled from the fraternity, and banned from any further participation in fraternity events.

### VIII. Notification

36. Ms. Butters and Ms. Polglase met with Wendy Young, then Associate Director of Judicial Affairs at James Madison University, on April 12, 2013. Ms. Young was the second James Madison University employee who received Ms. Butters' direct complaint of sexual assault, involving the three then currently enrolled James Madison University students who perpetuated the sexual assault.

37. In their meeting, Ms. Butters explained that she was intoxicated prior to the sexual assault, described in graphic detail what the three James Madison University students did to her and explained to Ms. Young that the acts were not consensual. Ms. Butters further explained that the video was being widely disseminated among the student population at James Madison University, described the negative interactions, comments and pressure that she was receiving from her peers who had seen the video or were otherwise aware of the assault, and

9

explained that the rampant dissemination of the video continued to harass and victimize her. Ms. Butters also explained that she feared reprisal from the three students, who remained in close proximity to her as the details of the assault became widely known throughout the James Madison University community.

38. Immediately after the meeting, Ms. Butters provided Ms. Young with a copy of the video depicting her sexual assault.

39. Before viewing the video, Ms. Young explained that James Madison University's protocol for handling student reports of sexual assault was time consuming, involved re-living the event multiple times, would require the victim to explain the facts and circumstances both in person and in writing to multiple individuals within the University's administration and, in this case, would require a significant amount of time and effort from Ms. Butters.

40. When Ms. Butters inquired about the potential sanctions facing the men who assaulted her, Ms. Young explained that James Madison University's adjudicatory process contained a variety of sanctions up to and including expulsion, but further indicated that expulsion was very rare and highly unlikely in light of the facts and circumstances described by Ms. Butters.

41. In its totality, Ms. Young's initial conversation discouraged and dissuaded Ms. Butters from pursuing her complaint, and communicated the unmistakable impression that James Madison University's policy for handling student-on-student sexual assault and harassment, even when proven by video recording, was to discourage the victim from proceeding with a complaint.

42. At the conclusion of this first meeting with Ms. Young, Ms. Butters explained that she would like for James Madison University administrators to review the video evidence that she would provide, and to consider in particular the fact that the acts depicted in the video and the subsequent dissemination of the recording occurred without her consent. Disheartened by Ms.

10

Young's description of the University's internal disciplinary process and fearful of social ostracism within her peer group, Ms. Butters also asked that the University handle the complaint without her involvement. Ms. Butters was told that JMU would neither investigate nor act upon the matter independently.

43. As James Madison University intended, the policy and protocol for handling complaints of sexual assault and harassment between students, as explained by Ms. Young, had the chilling effect of silencing Ms. Butters and dissuading her from making a formal complaint.

44. In the immediate aftermath of Ms. Butters meeting with Ms. Young, she was provided with the name and contact information for a counseling center on campus. Ms. Butters followed through with this referral, and began seeing a mental health counselor to help her deal with the mental, emotional, and psychological toll caused by these traumatic events.

45. Aside from the sanction of immediate expulsion from the fraternity imposed by Sigma Chi fraternity, Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion remained on campus and participated fully in campus life at James Madison University, while dissemination of the video continued unchecked.

### IX. Investigation

46. April 26, 2013 was the last day of classes for the Spring semester at James Madison University. During the period between April 26, 2013 and December 6, 2013, Ms. Butters received one email from Ms. Young inquiring as to whether Ms. Butters had made any decisions as to how she wanted to proceed and asking if Ms. Butters was alright.

47. Ms. Butters was not alright. She was the victim of a sexual assault by fellow students at James Madison University, and continued to be sexually harassed and further victimized as the video of her assault continued to be widely disseminated throughout the campus

11

community. James Madison University took no action whatsoever for a period of almost eight months to investigate, adjudicate, or otherwise respond to her complaint of sexual assault and harassment. She was told that proceeding with the adjudicatory process would take up a significant amount of her time, would force her to relive the event over and over, and was also told that a formal complaint was unlikely to result in any significant sanctions for the perpetrators. She felt abandoned by the institution of higher education that had promised to keep her safe and secure.

48. During this period, Ms. Butters struggled both socially and academically. The video of her assault and the circumstances surrounding it came to define her identity on campus. She was frequently asked about the assault. Some few students expressed the opinion that it was her fault for having been intoxicated. She encountered the perpetrators of the assault regularly, despite her efforts to avoid activities where potential encounters with them were likely. Ms. Butters gradually stopped attending classes and failed all of her courses.

49. Ms. Butters' father, William Butters, is a police officer employed by Virginia Commonwealth University located in Richmond, Virginia. On November 4, 2013, he sent a lengthy email to Dr. Warner, the Vice President of Student Affairs at James Madison University, outlining the facts and circumstances surrounding his daughter's sexual assault, detailing Ms. Butters' interactions with Ms. Polglase and Ms. Young, and asking fourteen specific questions concerning the means and methods by which James Madison University planned to investigate the assault and harassment of his daughter.

50. Dr. Warner forwarded Mr. Butters' communication to Dr. James McConnell who responded with an email indicating that Dr. Josh Bacon was the correct person to address Mr. Butters' concerns. Ultimately, James Madison University reiterated that Sarah would have to

12

formally initiate the adjudicatory process outlined by Ms. Young, including the stress, humiliation and re-victimization associated with the process that had been explained to her previously, before James Madison University would take any action in the matter.

51. After reviewing the video, Dr. Bacon made the extraordinary comment to Sarah Butters' father that he believed the acts depicted in the recording were consensual. This remark reinforced the perception of both Sarah Butters and her father that James Madison University was not interested in imposing any legitimate sanctions against the perpetrators of an obvious sexual assault, and was motivated instead by the desire to avoid negative publicity concerning the University.

52. On December 17, 2013, Ms. Butters was informed that James Madison University revoked her financial aid because she received failing grades in all five classes she enrolled in during the fall semester. Devastated mentally and emotionally, and seeing no opportunity to rebuild her life academically or socially, Ms. Butters acknowledged that she could not handle this problem on her own and that she felt that she had no option other than to go through the formal adjudicatory process outlined by James Madison University.

53. On January 10, 2014, Ms. Butters signed paperwork provided by James Madison University formalizing her desire to proceed with sexual assault charges against Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion.

## X. Adjudication

54. Ms. Butters spent hours creating a timetable summarizing all of the known facts and circumstances surrounding her sexual assault, the dissemination of the video and a general description of the communications she had with members of James Madison University's student

13

population regarding the incident. She provided this comprehensive document to the Office of Judicial Affairs.

55. The first adjudicatory hearing was held on February 20, 2014. Ms. Butters was required to testify concerning the assault and the effects it had upon her life.

56. Two additional hearings, identical to the first, were held on February 21, 2014 and February 23, 2014. Despite the fact that all three students participated in the assault simultaneously, Ms. Butters had to repeat and relive the assault and harassment three separate times. Ultimately, all three men were found to be responsible for sexual assault and sexual harassment.

57. The day after the third and final adjudicatory hearing, Dr. Josh Bacon met with Ms. Butters in Ms. Young's office. Dr. Bacon advised Sarah at that time that he was contemplating imposing "expulsion after graduation." He explained to her that he felt the need to craft a punishment that Ms. Butters would accept, but that the perpetrators would not appeal. Ms. Butters found Dr. Bacon's indifference to her victimization concern combined with an overarching regarding the likely responses of the perpetrators to whatever sanction he may choose, to be profoundly disturbing.

58. It was clear to Ms. Butters that James Madison University's primary motivation was to conclude the matter as quickly and quietly, with as little negative publicity to the University as possible. Of equal concern, it appeared that Dr. Bacon was testing Ms. Butters' response to his proposed sanction, so that he could weigh how much it would appease her should it be ultimately imposed.

59. When the punishment of "expulsion after graduation" was proposed, Ms. Butters sat quietly and wept. After several hours of thought and deliberation, Ms. Butters sent an email to

Dr. Bacon stating her belief that the proposed punishment of "expulsion following graduation" was inadequate.

60. The next day, Dr. Bacon notified Ms. Butters via email that Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion had been found to be responsible for sexual assault and harassment, and that the punishment would be "expulsion following graduation."

61. Dr. Bacon and Ms. Butters met on February 25, 2014, so that Dr. Bacon could explain what the sanction of "expulsion after graduation" would mean in practical application.

62. Dr. Bacon explained that there was no protocol in place to ensure that the three men did not return to campus following graduation. In fact, one of the three would be allowed to remain on campus indefinitely until he finished his degree. Dr. Bacon suggested that Ms. Butters should telephone the campus police and notify them if she observed the men on campus; there would be no proactive steps taken by the University to ensure compliance with the sanction. When Sarah asked whether a representative of the University would be present to make sure that the perpetrators did not participate in the graduation ceremony, Dr. Bacon explained that there would not be a specific monitor in place. When Ms. Butters asked about the no contact provision she was again told that if the men contacted her she would have to call the police.

63. In what appeared to Sarah to represent an attempt to delay the process, Dr. Bacon advised Ms. Butters that she should appeal the decision and go through the adjudicatory process again.

64. Ms. Butters' appeal was heard on March 20, 2014, more than one year after the original assault. Again, Ms. Butters was forced to relive the traumatic event, to confront the men who videotaped themselves groping and fondling her bare breasts, and to discuss her personal life and the impact the assault had on her, in the presence of her attackers and a group of strangers.

15

65. At the conclusion of Ms. Butters' appeal, Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion were formally expelled by James Madison University. All three soon noted their appeals and the process restarted for a third time.

66. On April 2, 2014, Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion had their second hearings at the appellate level. Ms. Butters was forced yet again to relive the event, to discuss the effects the sexual assault had upon her life and to address deeply personal issues in the presence of her attackers.

67. Due to the special circumstances that the assault was videotaped by those who perpetrated it, the fact that the three men were responsible for sexual assault and sexual harassment of a female student was never at issue in any meaningful way during either of the appellate hearings. The appellate proceedings were instead focused upon the sanction. The convoluted structure employed by James Madison University to adjudicate complaints of sexual assault between students operated in lieu of any fixed rules, guidelines or sanctions, once responsibility for sexual assault and sexual harassment was determined. The lack of fixed protocol or procedure regarding punishment for student-on-student sexual assault and harassment served to re-victimize Ms. Butters repeatedly and unduly lengthened her ordeal.

### XI. Punishment

68. On April 3, 2014, Ms. Young sent an email to Ms. Butters outlining the final decision rendered in her complaint. Mr. Dertzbaugh, Mr. Lunney Jr. and Mr. Scallion were expelled upon their graduations.

69. Ms. Young explained that, as applied to Mr. Lunney Jr. and Mr. Scallion, expulsion upon graduation meant that they could not be on James Madison University's campus for any reason after graduation including graduate classes and events. They could not walk at a

16

Case 5:15-cv-00015-EKD-JCH   Document 2   Filed 03/03/15   Page 16 of 20   Pageid#: 18

graduation ceremony. They were to have no contact with Ms. Butters to begin immediately through graduation. They were only allowed on campus for academics and classes to begin immediately through graduation. They may not participate in student clubs or organizations to begin immediately through graduation. As experts in the field, they must work with a staff member from the Judicial Affairs Office to create a 30 minute presentation on sexual assault for possible presentation to student organizations.

70. James Madison University's final decision to expel Mr. Lunney Jr. and Mr. Scallion "following graduation" was rendered 396 days after the two men recorded themselves sexually assaulting Ms. Butters in Panama City, Florida, which was also 372 days after the James Madison University employee acting as the official advisor to Ms. Butters' sorority was formally notified of the sexual assault and ongoing sexual harassment. The two men graduated from James Madison University and received their diplomas.

71. Ms. Young also explained to Sarah that Mr. Dertzbaugh would remain actively enrolled as a tuition-paying James Madison University student, and that he would be permitted to attend classes in close proximity to Ms. Butters until he completed his degree.

72. Dr. Bacon further explained to Sarah that she, rather than the University, would bear the responsibility to monitor compliance and provide notice of any violations, meaning that the only party assigned to enforce the penalty would be Sarah Butters.

73. It was abundantly clear to Ms. Butters that James Madison University did not have any policy or procedure in place to ensure that the three men would abide by the terms and conditions of the supposed sanction.

74. Ms. Butters failed all of her classes, lost her financial aid, severed ties with many

of her peers and continues to suffer from substantial mental and emotional anguish as a result of the methods by which James Madison University responded to, investigated, adjudicated and punished three male students who sexually assaulted and harassed her, including in particular the gross disparity between the offenses committed by her attackers and the punishment decided upon by the University. She withdrew from James Madison University on May 30, 2014. She returned to Hopewell, Virginia and resumed her employment at a local hotel.

75. Through this frustrating ordeal, James Madison University broke its most fundamental promise to Ms. Butters. James Madison University's discriminatory conduct deprived Ms. Butters of the opportunity to which she was entitled to learn, grow and mature, by denying her full and free access to the educational, social, recreational, and personal benefits and opportunities afforded by the University. Concurrently, James Madison University sent a powerful message to all of its students, prospective students, alumni, faculty, employees and the outside world that the University values its self-interest and desire to protect its reputation ahead of the safety and wellbeing of its students with regard to sexual assault and harassment. When faced with the most compelling evidence that a sexual assault occurred, and when confronted by a student willing to formalize a complaint in writing, the University signaled that it will mire the process in red tape and bureaucracy, before ultimately rewarding the perpetrators with a degree and a diploma, permanent symbols of their lifelong connection.

## XII. Conclusion

76. As described in paragraphs 2 through 75 herein, James Madison University has fostered and perpetuated a hostile educational environment on the basis of sex on its campus in violation of Title IX and its implementing regulations. James Madison University and its administrators have failed to take seriously sexual assault complaints, have not provided their

18

Case 5:15-cv-00015-EKD-JCH   Document 2   Filed 03/03/15   Page 18 of 20   Pageid#: 20

students with the proper resources and support that they require following sexual assaults, and have trivialized the seriousness of sexual assault and harassment by rendering grossly disproportionate and egregiously inadequate penalties, even when the misconduct is clearly proven and the guilt of the wrongdoer obvious. Female students who have been the victims of sexual assault and harassment have been left isolated and made to feel afraid to come forward, due to the likelihood of being re-victimized and further humiliated by the University.

77. The ultimate determination by the Defendant James Madison University to "punish" the three male students who sexually abused and harassed Sarah Butters by the three separate and distinct acts of the initial assault, the videotaping of the assault, and the deliberate and foreseeable widespread dissemination of the video throughout the campus community, by the grossly disproportionate "penalty" of dismissal *following graduation* illustrates James Madison University's indifference to sexual assault and harassment within its student body. In human terms, James Madison University has systemically disregarded and discouraged female students who register complaints of sexual assault and harassment, from proceeding through official University channels. The mental and emotional fallout on victims of sexual assault and harassment at James Madison University is immeasurable, as demonstrated by the University's handling of the matters described herein.

### XIII. Prayer for Relief

78. In compensation for James Madison University's actions and failure to act as noted herein, deliberate indifference, discrimination based upon gender, deprivation of Ms. Butters' opportunity for educational benefit, and the harm done to Ms. Butters' mental and emotional well-being, all in violation of Title IX of the Educational Amendments of 1972, 20 U.S.C. §

19

Case 5:15-cv-00015-EKD-JCH   Document 2   Filed 03/03/15   Page 19 of 20   Pageid#: 21

1681(a), the Plaintiff Sarah Butters seeks unspecified economic damages from Defendant James Madison University, and such other relief as this Court may deem just and appropriate.

TRIAL BY JURY IS DEMANDED.

**Respectfully Submitted,**

**Sarah Butters,**

By: _____

W. Coleman Allen Jr. (VSB 19847)
Christopher J. Toepp (VSB 75519)
Allen, Allen, Allen and Allen
1809 Staples Mill Road
Richmond, Virginia 23230
Tel.:  (804) 257-7594
Fax:  (866) 631-8130
Email: Coleman.Allen@allenandallen.com
         Christopher.Toepp@allenandallen.com

20

Case 5:15-cv-00015-EKD-JCH   Document 2   Filed 03/03/15   Page 20 of 20   Pageid#: 22